# CHARLESTON

## STATE v. WILSON.

Submitted September 4, 1914. Decided September 22, 1914.

1. CRIMINAL LAW—*Witnesses—Harmless Error—Expert Testimony—Credibility of Prosecutrix.*

Testimony of physicians as experts, concerning the usual and ordinary effect of the severe nervous shock incident to a rape

committed upon a woman, the manifestations thereof and their dura-tion, as bearing upon her credibility as a witness and the truth of her accusation, is admissible; but, as it is not in character exclusive-ly expert, the rejection thereof is harmless error. (By four judges.) (p. 776).

2. WITNESSES—*Cross-Examination—Opinion*.

A witness on a trial upon an indictment for rape who has testified to the existence of certain physical injuries to the prosecutrix, with-out any expression of opinion as to what might have caused them, cannot be cross-examined as to any opinion he may have, concerning the cause thereof. (p. 778).

3. RAPE—*Instructions—Evidence*.

In the trial of such a case, it is not erroneous to give an in-struction which, in detailing subjects of jury inquiry, includes ''the presence or absence of scratches or other marks of violence upon the face or person of the defendant'' and directs them to consider whether or not the clothing of the prosecutrix was torn, even though there is no evidence of marks of violence on the defendant nor any evidence of any torn clothing. (By four judges; POFFENBARGER, J., dissenting.) (p. 778).

4. CRIMINAL LAW—*Harmless Error—Instructions*.

An instruction which, after telling the jury they may convict upon the uncorroborated testimony of the prosecuting witness, if, from it, they believe the prisoner guilty, further says they may find him guilty if they believe him to be so ''from the testimony of the prosecutrix and corroborating circumstances and facts testified to by other witnesses,'' is harmless when read with other instructions on the same subject, and does not call for reversal. (By four judges; POFFENBARGER, J., dissenting.) (p. 779).

5. RAPE—*Instructions—Time of Complaint*.

An instruction in such a case, directing the jury to consider, among other things, the time intervening between the alleged outrage and the complaint by the prosecutrix, need not specify such time. (p. 780).

6. CRIMINAL LAW—*Refusal of Instructions—Evidence*.

In a case in which the evidence is largely direct, positive and oral, prayers for instructions telling the jury they must acquit the prisoner, if there is any reasonable hypothesis consistent with his innocence, are properly denied, the rule being applicable only to issues dependent upon circumstantial evidence. (p. 780).

7. SAME—*Cautionary Instructions—Witnesses*.

An instruction invoking the maxim, Falsus in unum falsus in omnibus, must state both alternatives as to so much of the evidence of the witness as is not known to be false, by telling the jury they

74 W. Va.

may disregard it or give it such effect as they think it is entitled to. (p. 781).

8.  SAME—*Appeal—Evidence.*
    Mere possibilities and probabilities inconsistent with the verdict and arising out of the evidence, but opposed by direct and positive evidence, do not warrant disturbance of the verdict by an appellate court.  (p. 781).

(POFFENBARGER, JUDGE, dissenting in part.)

Error to Circuit Court, Jefferson County.

E. Graham Wilson was convicted of rape, and brings error.
                                                    *Affirmed.*

*Campbell & Sheets, Martin & Seibert, John L. Lee* and *Marshall McCormick,* for plaintiff in error.

*A. A. Lilly,* Attorney General, *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

POFFENBARGER, JUDGE:

Convicted of the crime of rape and sentenced to imprisonment in the penitentiary for a period of fourteen years, Wilson complains of the judgment, assigning error in numerous rulings of the trial court.

According to the testimony of both the prisoner and the prosecution, the former had carnal knowledge of the latter in such manner and to such extent as to constitute the crime of rape, provided it was not done with the consent of the prosecutrix.   Whether there was such consent within the meaning of the law, was the vital question in the case.   There were no eye witnesses to the transaction between the parties, save the actors themselves, and what transpired depends largely upon their oral testimony.  · The State relied upon certain physical injuries found upon the person of the prosecutrix, shortly after the transaction, as circumstances and facts tending to corroberate her testimony.   There were bruises on her arm, one leg and the back and rupture and inflammation of the private parts.  ·The prisoner resisted this effort to corroborate, by testimony tending to show the non-existence of all the bruises, except one, at the time of an examination made by a physician, soon after the complaint

was made and the possibiltiy of laceration and inflammation
as the result of voluntary action.  This contradictory testi-
mony adduced on behalf of the prisoner was supplemented
be evidence tending to show divulgence of the secret by the
prosecutrix herself, through fear of exposure by pregnancy.
In other words, the theory of the defence is that she volun-
tarily submitted and afterwards, becoming frightened, dis-
closed her condition to certain members of her family and
intimate friends, and, having done this, became impressed
with the necessity of making the false charge against the
prisoner in exoneration of herself.  She admits having taken
precaution against pregnancy by the use of a purgative and
syringe and also of having taken the advice of her physician,
who assured her, that, on account of her age and condition,
there was absolutely no danger.  Her conduct immediately
after the transaction is relied upon as being inconsistent with
the accusation made.  At the time thereof, she was the guest
in the house of the accused and went with him in a buggy to
a secluded spot, and, after the occurrence complained of,
drove back with him to his home, and remained there until
sometime in the afternoon and then drove with his wife to
Charles Town, the place of her residence, and, after reaching
that place, did not immediately go home, but drove around
to one or more houses with Mrs. Wilson and then a mile into
the country and back, all without having made any complaint
or indicated in any way the happening of anything unusual.
The only instance of the detection of anything in her appear-
ance or conduct indicative of the occurrence of anything un-
usual is found in her testimony, qualified by that of Mrs.
Wilson and the accused.  She says something in her appear-
ance on her return to the Wilson home caused Mrs. Wilson
to ask her what was the matter and if she had had an acci-
dent, to which question she had replied "No," at the same
time sinking into a chair.  Mrs. Wilson says the prosecutrix,
on entering the house, called "Hello" in a bright cheerful
voice, but evaded her question when asked if she had had a
pleasant drive, by saying it was a fine morning for a drive,
and thereupon, prompted by the evasion or her knowledge
that the horse was young, she asked whether they had had an

accident or if the horse had scared, but she does not remember what reply was made. She says, however, she did observe that Miss Turner's face was flushed and her large straw hat was a little to one side. Wilson admits his wife asked him if the horse had scared and says he told her it had and that Miss Turner was frightened "just a little." There were no torn clothes nor any scratches on the face of either of the parties.

The rejection of expert testimony of two medical witnesses, offered for the purpose of proving the physical effect of a nervous shock generally incident to such an experience as the prosecutrix claims to have undergone, and the outward manifestation thereof and the period of time during which such manifestations would likely continue, is a subject of serious and earnest complaint. To sustain this ruling, the learned judge who tried the case relied upon *People* v. *Royal*, 53 Cal. 62, but the case is not in point. The court disapproved opinion evidence of force in that case, because it was founded upon actual, positive evidence of solicitation and nothing more. The ruling is equivalent to an adjudication that a witness will not be permitted to say white is black, or that certain conduct having a recognized character in fact and law may be regarded as something different. *Cook* v. *State*, 24 N. J. L. 843 involved a question nearer in character to the one here presented. The question there rejected as improper was, whether a woman placed in the situation described by the prosecutrix would be more likely to swoon or to be nerved to unusual strength. The court rejected it upon the following considerations: "The express testimony of a witness cannot be impeached by a mere opinion that the fact stated is likely or unlikely. It is apparent, moreover, that the question, as propounded, was not susceptible of a rational answer. Women of different nervous temperaments, would, in a given situation, have acted differently, and the same woman, under one state of health or nervous excitability, would act very differently from what she would under another." It will be observed that this question was intended to elicit an opinion as to what a person would likely do under certain circumstances, in contradiction of what the witness said she had

done. In this case, the evidence was offered to prove a usual and ordinary effect of a severe nervous shock, resulting from pain, fright and exertion, bearing upon the credibility of the prosecutrix and the truth or falseness of her statement. The test of the admissibility of opinion evidence, whether expert or non-expert, is the competency or incompetency of unskilled men constituting a jury, to form as accurate and reliable an opinion upon the subject matter of the testimony as persons having special knowledge of the subject, from their learning, professions, and experience, or their possession of such knowledge of the subject matter as it is impossible fully and completely to communicate to the jury. Physicians are students of human anatomy and of the qualities, characteristics and functions of the human body and all of its parts. Their knowledge of the nervous system, its functions, strength, weakness and the effect of influence thereon of any character is obviously more extensive and reliable than that of persons who have never studied or had occasion to observe them, in the pursuit of their vocations. Physicians come in contact with them and have them under observation almost daily. In my opinion, the court erred in the exclusion of this evidence. Its admissibility is affirmed by authority. In *Place* v. *Railroad Company*, 160 Mass. 447, the court held as follows: If the plaintiff in an action against a railroad corporation for personal injuries has given to the corporation, shortly after the accident which caused the injuries, a receipt in full and a release, which he contends was procured from him by fraud while he was in a dazed condition, the judge, in his discretion, may admit the testimony of an expert that the plaintiff's mind might be dazed or confused as the result of such an accident as he has described, even though the testimony does not go so far as to show that result was probable.'' In *Edwards* v. *Burke*, 78 Pac. 610, the court held as follows: ''In an action for an injury to a woman it was not reversible error for the court to permit a physician to be asked whether it was not a fact that usually such a severe shock as that in question sustained by a woman, especially of plaintiff's age, affects her more or less for the balance of her life so far as her nervous organization is concerned.'' Of course non-

experts, such as men constituting a jury, would have some knowledge of the subject and know that a shock to the nervous system would produce effect, but their knowledge as to its forms, extent and duration is. certainly not as full and complete as that of a physician of recognized ability, and the litigant is entitled to submit to the jury all the relevant material evidence he has. In the cases of non-expert witnesses, they are allowed to express their opinions upon the subject matter of their evidence when they cannot put the jury in full and complete possession of all they observed, even though they are able to lay before the jury the substance of their observations. The other judges agree to the admissibility of this evidence, but think the error in the rejection thereof was harmless, because the evidence is not exclusively expert in character.

Exception was taken to the action of the court, in its refusal to permit a medical witness to answer, on cross-examination, a question as to whether or not certain physical injuries, to the existence of which he had testified, might not have been the result of voluntary, as well as involuntary, action. This exception is not well taken. The witness had not expressed any opinion as to what had caused the injury. Had he done so, the question would have been proper on cross-examination. Taking this view, the court properly accorded the prisoner the right to introduce the testimony of the witness as his own. The evidence was not excluded. It was voluntarily withheld because the court would not admit it as part of the cross-examination.

Instruction No. 3, given by the court, in detailing facts and circumstances proper for jury consideration, included scratches or absence of scratches or marks of violence on the face or person of the defendant and an inquiry as to whether or not any of the clothing of the prosecutrix was torn. There is no evidence of any marks of violence upon the defendant or any torn clothing of the prosecutrix. I think it was improper for the court to submit inquiries of that sort, though my associates do not concur in this view. The impropriety of submitting inquiries as to matters having no foundation in the evidence has often been declared by this court. *Kuyken-*

*dall* v. *Fisher*, 61 W. Va. 87; *Parker* v. *Building Association*, 55 W. Va. 134; *State* v. *Dickey*, 46 W. Va. 319; *State* v. *Cross*, 42 W. Va. 253; *Chadister* v. *Railroad Company*, 62 W. Va. 566.

Instructions Nos. 5 and 7, given at the instance of the State, both advised the jury conviction could be had upon the uncorroborated testimony of the prosecutrix, if from it they believed beyond reasonable doubt, the defendant was guilty. Notwithstanding this, the court gave instruction No. 6 reading as follows: ''The court instructs the jury that in the case of rape, it is not essential that the prosecutrix should be corroborated by the testimony of other witnesses as to the particular act constituting the offence, and if the jury believe from the testimony of the prosecutrix and the corroborating circumstances and facts testified to by other witnesses, that the defendant did have carnal knowledge of the prosecutrix by force and against her will as charged, the law would not require that the prosecutrix should be corroborated by other witnesses as to what transpired at the immediate time and place when it is alleged the assault was made.'' The instruction assumed the existence of corroborative facts and circumstances, although almost every alleged circumstance relied upon for corroboration was put in issue by the evidence. Indeed, every one was in some form. The giving of the other two instructions in this connection, and the request therefor on the part of the State, impliedly admit such facts and circumstances were in issue, since the instructions authorized a verdict upon the uncorroborated testimony of the prosecutrix. The addition to instruction No. 6, of its assumption, in terms, of the existence of such facts may have been accepted by the jury as an intimation by the court that some corroborative circumstances or facts had been established by the evidence, and as meaning that the jury might find the defend--ant guilty upon the uncorroborated testimony of the prosecutrix, or, upon her testimony corroborated by facts and circumstances assumed in the instruction. A similar assumption in an instruction given in *State* v. *Allen*, 45 W. Va. 65, was the real ground of reversal of the judgment in that case. In the opinion, another error is noticed, but the court passed

over it lightly. The following cases cited by Judge McWHORTER, in that opinion, fully sustain his conclusion: *People* v. *Strong,* 30 Cal. 151; *Whitley* v. *State,* 38 Ga. 50; *Pasley* v. *English,* 10 Gratt. 236. My associates regard the instruction as harmless.

The exception to instruction No. 8, relating to the reasonableness of the time within which the prosecutrix made her complaint, told the jury they could take in consideration her situation, her associations and all of the surrounding circumstances. Its sufficiency is challenged because of its omission to recite the time within which complaint was made. The exception is not well taken. The public accusation was not made for three or four days, but the evidence proves disclosure by the prosecutrix to members of her family on the evening of the day of the transaction.

The form of instructions Nos. 3 and 4, asked for by the defendant and refused by the court, justified the ruling. They would have told the jury that, if upon the whole evidence there was a reasonable hypothesis consistent with the defendant's innocence, they should find him not guilty. This rule is applicable only in the cases in which the issue depends in whole or in part upon circumstantial evidence. Part of the evidence in this case is circumstantial, but not all of it, and the instructions were not limited to the portion thereof that is circumstantial. They might have been proper, if they had been so limited. In so far as the guilt or innocence of an accused person depends upon the truth of oral testimony, the jury could always find an hypothesis consistent with the prisoner's innocence, in the incredibility of the witnesses for the State. This suffices to show inapplicability of the rule to that sort of testimony, and the necessity of confining its operation to so much of the evidence as is circumstantial, or to so much of the case as depends upon the circumstances, or the whole case in so far as it depends upon circumstantial evidence. Neither in substance nor form are these instructions or either of them similar to those approved in *State* v. *Lewis,* 69 W. Va. 472, *State* v. *Flanagan,* 26 W. Va. 117 and numerous others which need not be cited.

As the subject matter of instructions Nos. 8 and 10, asked

for by the defendant, is fully covered by the instructions given by the court on its own motion, the exceptions to the refusal thereof are not well taken.

Instruction No. 14, asked for by the prisoner and refused, would have told the jury that, if they believed from the evidence the only evidence tending to prove the guilt of the accused was the testimony of the prosecuting witness and that her testimony on any material point was untrue, they were at liberty to disregard her whole testimony. Such an instruction was approved in *State* v. *Perry*, 41 W. Va. 641, but its form, as there given, has been disapproved in *State* v. *Musgrave*, 43 W. Va. 672; *Ward* v. *Brown*, 53 W. Va. 229 and *State* v. *Clark*, 64 W. Va. 627. Moreover, as given the *State* v. *Perry*, it was a departure from the rule declared in *State* v. *Thompson*, 21 W. Va. 741. Hence we think it was properly refused.

Instruction No. 15, asked for by the defendant, was properly refused because it assumed a state of the evidence contrary to that disclosed by the record. The witness in testifying to her resistance, gave facts and details thereof. The instruction assumed she did not do so.

On a motion to set aside the verdict on the ground of disqualification of certain jurors by reason of prejudice, considerable evidence was taken to prove that Thomas West Jr., one of the jurors who sat in the case, had declared his belief in the guilt of the prisoner prior to the date of the trial. Two witnesses testified to such declarations, but he most emphatically denied the statements imputed to him. He was positive he had not mentioned the Wilson case to one of them, and, as to the other, he gave the conversation he had with him, in detail, denying positively any expression of opinion on his part and saying the witness who made the charge against him had vehemently expressed his own belief in the innocence of the prisoner. Having seen these witnesses and heard their statements, the trial judge was better qualified to determine the question of veracity between them than we are. The other juror did not sit in the case. He had been one of the panel of twenty but had been stricken off. Nobody testified to his having expressed any opinion on the merits of the

case. The witness adduced to prove his incompetency seemed
to think he was disqualified because he had talked about it.
The juror admitted he had heard it discussed and read news-
paper accounts of the accusation but positively declared he
had always been in a state of mind that would permit him to
give the accused a fair and impartial trial. There was clearly
no error in the overruling of the motion. No verdict could
stand, if courts were required to grant new trials upon such a
showing as has been made here. The impeaching charges are
not established by proof.

The motion to set aside the verdict as being contrary to the
law and the evidence was properly overruled. It was not the
province of the trial court, nor is it ours, to say whether the
accused is guilty. This court cannot relieve innocent persons,
under conviction of crime, unless the state of the evidence is
such as to bring it within the rules authorizing courts to
overthrow verdicts. When a verdict stands upon conflicting
oral evidence, involving only credibility of the witnesses, the
verdict cannot be disturbed, provided the affirmative evidence,
if true, establishes the fact in issue. When the issue raised by
the conflicting oral evidence is determined one way or the
other by controling facts proven beyond question or admitted,
and the verdict is contrary to such facts, the court may set
it aside and should do so.

Here the positive evidence of the prosecutrix is that the
accused forcibly dragged her out of a buggy and outraged
her, while she resisted to the uttermost. She says she
screamed or attempted to and he placed his hands over her
mouth. Once she got loose and ran and he again caught her.
She thinks she screamed, while running, but does not remem-
ber whether she did or not, nor how far she ran. When down
on the ground she tried to push him away with all her might,
but he held her hands. Could he prevent her from scream-
ing while overcoming her? Who knows? Say it is possible
or likely he could not, if she tried, but such possibility or
even probability is not conclusive. May she not, when loose
and running, have lost her voice, for the moment, by reason
of terror? Can it be supposed she was in the full possession
of all her mental powers and capable of deliberating and

making defense, as a trained pugilist or athlete would have
done? If she did not at the moment think of screaming as a
means of delivery, would that be fatal? Is there no allow-
ance for erratic conduct in emergencies? Could he have held
her and prevented her from screaming or otherwise injuring
him and also from making outcry, while he unfastened a
single garment held in place by a single button, and so
avoided tearing it? Who knows? Likely he could not have
done so, but here we meet again the insufficiency of mere
probability against the truth of the oral evidence and cor-
rectness of the verdict. Suppose she made no outcry. Is that
conclusive? Not at all. It is a weighty circumstance for con-
sideration by the jury, but clearly not one calling for a new
trial at the hands of the court. Suppose, from failure of
recollection, or partial unconsciousnes of what she did, owing
to her alleged terrified state of mind, she testified falsely as to
some things, the jury could nevertheless give credit to other
portions of her testimony. The influences which may have gov-
erned her subsequent conduct, are different. Her silence was
evidence of consent, but it was of short duration, as has been
indicated. She divulged the secret to her sister and a
physician that evening. There was no immediate outcry and
flight, but that is not conclusive. An outcry could not save
her from what had already occurred, and the alleged crim-
inal was not threatening flight. There was time for con-
sideration as to purposes and methods. As the learned trial
judge observed. ''It was a serious question with her to decide
whether to tell of this assault and endure the life-long humil-
iation, shame and disgrace of the exposure, or to consider
that the harm was done and that she might as well let the
whole thing be buried with her when she died.'' How far
may the deliberation upon this weighty question, or the
reservation of it, have governed and controled her demeanor
throughout the remainder of that day? Are we more com-
petent to say than the jury? In the face of this possibility,
is there anything in her conduct of such decisive character as
to warrant this court in overthrowing the verdict? Certainly
not. Only one garment, her drawers, showed any consider-
able traces of blood. On them there was a large spot

thoroughly saturated. Experts say they discovered traces of blood on her underskirt, which may have been undiscernible to the jury. But that flow of blood may not have been rapid, and probably was not, and the drawers may have absorbed all of it. This absorption may have been aided by folds in the garment. In the improbability arising from lack of blood on her other clothing, there is clearly nothing decisive. It is said one of the physical injuries could have been caused by voluntary intercourse. That injury was an established fact. Was it caused by the use of the syringe and self-inflicted for use as fabricated evidence? That is denied and not proved. It rests upon a mere surmise and is no more than an unsustained accusation. Was it due to voluntary intercourse? Most likely no, because not accordant with common experience, but that was for the jury. There is controversy about the existence and number of bruises on the arms and other portions of the body of the witness, but all of that was clearly a matter for jury determination. There was positive testimony to their existence. Were they of subsequent self-infliction? The opinion of the jury as to that, aided by expert testimony, was clearly as good as ours would be.

A verdict cannot be set aside merely because it is, in the opinion of the court doubtful, or the judge, if a juror, would have come to a different conclusion. It must be manifestly, clearly wrong. *State v. Sullivan*, 55 W. Va. 597; *State v. Bowyer*, 43 W. Va. 182; *State v. Morgan*, 35 W. Va. 277; *State v. Cooper*, 26 W. Va. 338; *State v. Donohoo*, 22 W. Va. 761; *Vaiden's Case*, 12 Gratt. 717. The principle asserted in *Harvey v. Com.*, 103 Va. 854, *Clark v. Reindyk*, 9 Cranch, 153 and *Bowden v. Johnson*, 107 U. S. 251, is recognized by this court, but the question here is its applicability. In the Harvey case, no complaint was made for nearly nine months after the alleged outrage and after the pregnancy of the woman was beyond question and the exposure of her secret was imminent and certain. The offense was alleged to have been perpetrated on a public highway where people were likely to pass at any moment. Vastly different are the circumstances of this case. Of course, as held in the other two

cited cases, there are instances in which admitted circumstances will overcome the oral testimony of a single witness, but the circumstances must be decisive in character and weight.

I do not say the accused is guilty. That is not my province. It was for the jury to say whether he is or not, but the trial court should have properly submitted the question to the jury. In a case of this kind, involving life and liberty and in which every vital element of the offense is involved in a conflict of evidence, the rules governing the trial should be strictly adhered to. They have not been, and the errors give rise to presumptions of injury and prejudice not overcome by anything the court can see in the evidence, wherefore I would reverse the judgment and grant a new trial. I would base such action particularly upon the giving of instruction No. 6 at the instance of the state and on No. 3 given by the court on its own motion.

My associates, however, being of a different opinion and constituting a majority of the court, affirm the judgment.

*Affirmed.*