524 S.E.2d 655

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Dewitt WILLIAMS, Defendant Below, Appellant.**

No. 26352.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 3, 1999.

Decided Nov. 19, 1999.

Pamela Jean Games–Neely, Berkeley
County Prosecutor, Christopher C. Quase-

barth, Martinsburg, West Virginia, Attorneys for Appellee.

Robert C. Stone, Jr., Kiser, Stone & Cordell, Martinsburg, West Virginia, Attorney for Appellant.

Barbara Evans Fleischauer, Morgantown, West Virginia, Attorney for Amicus Curiae, National Organization for Women, West Virginia Chapter.

PER CURIAM:

This appeal was brought by Dewitt Williams, appellant/defendant (hereinafter referred to as "Mr. Williams"), from a judgment by the Circuit Court of Berkeley County finding him guilty of first degree sexual abuse and sentencing him to one to five years in the State Penitentiary. The defendant has made the following assignments of error: (1) the trial court's failure to strike certain jurors for cause, and (2) the trial court's refusal to give defense instruction No. 12. Having reviewed the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm the decision of the Circuit Court of Berkeley County.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 1994, Anna L.[1] traveled from Indiana with her mother and brother to visit Mr. Williams and his wife in Berkeley County.[2] During the visit Mr. Williams engaged in sexual conduct with Anna L. on several occasions. On the first occasion Mr. Williams placed his tongue in the child's mouth. On another occasion Mr. Williams placed his hands on the child's chest and inner thigh. During a third occasion Mr. Williams got into bed with the child and placed his fingers inside of her.

Mr. Williams' conduct with Anna L. was unknown until three years later, when Anna L. told her brother about the incidents. The matter was reported to West Virginia authorities and an investigation was begun.[3] Mr. Williams was subsequently indicted on five counts of sexual offenses. The case was tried on August 19, 1998. At the close of the State's evidence the trial court granted judgment of acquittal on Count I of the indictment. The jury acquitted Mr. Williams of Counts II, III and IV; but, found him guilty on Count V. This is an appeal from the jury's verdict.[4]

## II.

### STANDARD OF REVIEW

Two issues are presented in this case. The first issue concerns the trial court's refusal to strike certain jurors for cause. We have held that "[a] trial court's ruling on a challenge for cause is reviewed under an abuse of discretion standard." *State v. Phillips*, 194 W.Va. 569, 588, 461 S.E.2d 75, 94 (1995). A trial court's determination as to whether to strike a juror for cause will be "reverse[d] only where actual prejudice is demonstrated." *State v. Miller*, 197 W.Va. 588, 605, 476 S.E.2d 535, 552 (1996) (citation omitted).

The second issue presented involves the trial court's refusal to give Mr. Williams' proffered instruction No. 12. This Court stated in syllabus point 1, in part, of *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996) that "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion." Accordingly, the issue we must decide, is "not whether the jury charge was faultless in every particular but whether the jury was mislead in any way and whether it had an understanding of the issues and its duty to

1. Anna L. was ten years old at the time. As is our customary practice with sensitive matters, we use the initials of the last names of juveniles. *See Benjamin R. v. Orkin Exterminating Company, Inc.*, 182 W.Va. 615 n. 1, 390 S.E.2d 814 n. 1 (1990).

2. The defendant is the great-grandfather of Anna L.

3. Evidence of sexual conduct with other adolescent girls related to Mr. Williams was also uncovered.

4. Additional facts are provided in connection with our discussion of the particular issues to which they relate.

determine those issues." *Hinkle*, 200 W.Va. at 285, 489 S.E.2d at 262.

## III.

## DISCUSSION

### A. *Refusal To Strike Certain Jurors For Cause*

■ Mr. Williams first argues that the trial court committed error by refusing to strike four prospective jurors for cause during voir dire. The prospective jurors in question were Marion Beard, Sharon Adams, Ursula Ernest and Calvin Caldwell.[5] In syllabus point 4 of *State v. Miller* we defined the test for determining juror bias:

> The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

In syllabus point 5 of *Miller* we stated "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Finally, we noted in syllabus point 6 of *Miller*, in part, that "[t]he challenging party bears the burden of persuading the trial court that the juror is partial and subject to being excused for caused."

■ **1. Challenge to Mr. Beard.** During voir dire of Mr. Beard he indicated that he believed when a person is indicted that person is guilty of the offense. The following exchange between the trial court and Beard occurred regarding this matter:

> Mr. Beard: May I ask a question?
>
> The Court: Yes, sir. Mr. Beard?
>
> Mr. Beard: Yeah. If it's all written down—and it's got guilty, I don't understand—to me he would be guilty if it's all

written down here, or the police wouldn't have written it down.

> The Court: Is it your perception, sir, that—that because the police officer may think that the accused is guilty, that he would be guilty?
>
> Mr. Beard: Well, usually anything that is written down—
>
> The Court: You mean the Indictment?
>
> Mr. Beard: Yes, sir. If that's what it's called.
>
> The Court: Because—you understand that the Indictment is merely an accusation and that it's founded—it's issued based upon a proceeding in which the accused had no opportunity to appear and it's based upon a lesser standard of evidence and it's a very one-sided affair. It's merely an accusation.
>
> Having explained that do you now, do you still perceive because he has been accused that he's probably guilty?
>
> Mr. Beard: Well, I was thinking it was written down, it was ultimately guilty.
>
> The Court: No, sir. That's why we have trials.

Subsequent to the above exchange between the trial court and Mr. Beard, Mr. Williams moved to strike Mr. Beard for cause. The trial court denied the motion and explained its reasoning as follows: "I was satisfied by his response to my follow-up. Obviously the gentleman was unsophisticated in the ways of the criminal justice system, but that doesn't disqualify him. When it was explained to him what a one-sided affair the Grand Jury really is, I think the gentleman took it to heart." The State argues that we should defer to the trial court's ability to observe Mr. Beard's demeanor in refusing to strike him for cause. We agree.

■ In view of the colloquy engaged in between the trial court and Mr. Beard, we do not believe the trial court abused its discretion in refusing to strike Mr. Beard for cause. The decision to strike Mr. Beard for cause is a matter that is controlled by Mr. Beard's demeanor or credibility when responding to the trial court's questions. How-

---

**5.** The defendant utilized preemptory strikes to remove each of the jurors.

ever, the record cannot accurately describe Mr. Beard's demeanor when the exchange occurred with the trial judge. The trial court was convinced, based upon Mr. Beard's responses and his demeanor, that Mr. Beard truly understood that an indictment was nothing more than an accusatory instrument and not evidence of guilt. We have consistently ruled that, when an issue is heavily influenced by demeanor or credibility, we must defer to the trial court. *See Phillips,* 194 W.Va. at 590, 461 S.E.2d at 96 ("Giving deference to the trial court's determination, because it was able to observe the prospective jurors' demeanor and assess their credibility, it would be most difficult for us to state conclusively on this record that the trial court abused its discretion"). "A reviewing court cannot assess witness credibility through a record." *Michael D.C. v. Wanda L.C.,* 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). *See Gum v. Dudley,* 202 W.Va. 477, 484, 505 S.E.2d 391, 398 (1997) ("The trial court [is in the best position to] observe[ ] the demeanor of the witnesses and other nuances of a trial that a record simply cannot convey"); *State v. Butcher,* 165 W.Va. 522, 527, 270 S.E.2d 156, 159 (1980) ("The trial court had the benefit of observing the demeanor of the witness as he testified, and we are without such benefit"); *State v. Roberts,* 136 W.Va. 391, 400, 68 S.E.2d 48, 53 (1951) ("If there had been any conflict or inconsistency anywhere in the testimony, by which the truth of the testimony ... was drawn in question, we would feel that we could not interfere with the decision of the trial court, since that court heard the witnesses testify and had the opportunity to observe their demeanor, respectively, and was thus in a better position than we could be to deduce the truth"). *See also, Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984) ("As we have said on numerous occasions, the trial court's resolution of [juror bias] questions is entitled, even on direct appeal, to 'special deference' "). As such, we conclude that the trial court did not err by refusing to strike Mr. Beard from the jury panel for cause.

■ **2. Challenge to Adams, Ernest and Caldwell.** During voir dire Mr. Williams also asked the panel of prospective jurors if any of them would be affected in their deliberations if evidence of similar, but noncharged, acts were introduced into evidence. It appears that ten jurors raised their hands to indicate they would be affected by evidence of other noncharged acts. The trial court then asked the ten jurors whether they would follow an instruction that limited how they could use the evidence of other noncharged acts. Seven jurors indicated they would not follow a limiting instruction. The trial court struck all seven jurors for cause. Three of the remaining jurors, Adams, Ernest and Caldwell, indicated they would follow a limiting instruction. Mr. Williams, nevertheless, moved to strike the remaining three jurors for cause. The trial court refused.

■ We indicated in *Miller,* 197 W.Va. at 606, 476 S.E.2d at 553 that "[t]he trial court is in the best position to judge the sincerity of a juror's pledge to abide by the court's instructions; therefore, its assessment is entitled to great weight." *Miller* also stated that "an appellate court only should interfere with a trial court's discretionary ruling on a juror's qualification to serve because of bias when it is left with a clear and definite impression that a prospective juror would have been unable faithfully and impartially to apply the law." *Id.* The record in this case does not leave this Court with "a clear and definite impression" that jurors Adams, Ernest and Caldwell would not have followed a limiting instruction by the trial court. Thus, we find no abuse of discretion in the trial court's refusal to strike for cause jurors Adams, Ernest and Caldwell.

### B. Defense Instruction No. 12

■ The final assignment of error by Mr. Williams relates to the trial court's refusal to accept proffered jury instruction No. 12. We have previously held that "an instruction offered by the defense should be given if the proposed instruction: (1) is substantively correct, (2) is not covered substantially in the charge actually delivered to the jury, and (3) involves an important issue in the trial so the trial court's failure to give the

instruction seriously impairs the defendant's ability to effectively present a defense." *Hinkle*, 200 W.Va. at 285, 489 S.E.2d at 262. In syllabus point 4 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995) we further stated that:

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

█ Instruction No. 12 proffered by Mr. Williams read as follows: "The Court instructs the jury that if you believe from the evidence in this case that the testimony of [the victim] is uncorroborated, then you should scrutinize said testimony with great care and caution. The Court further instructs the jury that you are to determine

[the victim's] credibility; however, if you believe that her testimony is inherently incredible, then you should disregard her testimony and find the Defendant not guilty."

Mr. Williams contends that instruction No. 12 is supported by our decision in *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981). Mr. Williams has misinterpreted *Payne*. One of the issues in *Payne* concerned identification of the defendant as the actual person who raped the victim. The only person who provided evidence of the defendant's identification was the victim. In response to that specific fact pattern this Court held in syllabus point 5 of *Payne*:

Where the State's case is based upon the uncorroborated and uncontradicted identification testimony of a prosecuting witness, it is error not to instruct the jury upon request that, if they believe from the evidence in the case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, then the jury should scrutinize such testimony with care and caution.

A *Payne* instruction concerns identification of the defendant. A *Payne* instruction does not concern the acts alleged to be perpetrated by the defendant.[6] Thus, we find no abuse of discretion in the trial court's rejection of instruction No. 12.[7]

---

6. An amicus brief was filed on behalf of the National Organization for Women urging that this Court not permit a *Payne* instruction to be applied in this case and that we overrule *Payne* in sexual assault cases. While we agree that a *Payne* instruction is not applicable to the facts of this case, we decline to reach the issue of the continued viability of a *Payne* instruction on the issue of identification of a perpetrator in a sexual assault prosecution.

The decision in *Payne* discussed the case of *State v. Perry*, 41 W.Va. 641, 24 S.E. 634 (1896) as a perpetrator identification case. However, to the extent that *Perry* may be viewed as requiring such an instruction under the facts presented by the defendant in this case, this Court has specifically rejected the use of a *Perry* instruction under such circumstances. *See State v. Wilson*, 74 W.Va. 772, 83 S.E. 44 (1914); *State v. Clark*, 64 W.Va. 625, 63 S.E. 402 (1908); *Ward v. Brown*, 53 W.Va. 227, 44 S.E. 488 (1903); *State v. Musgrave*, 43 W.Va. 672, 28 S.E. 813 (1897).

7. The trial court's general charge adequately addressed the issue of credibility of witness testimony:

You shall carefully consider the testimony of each and every witness and not disregard or overlook any testimony witness or evidence.

You're the sole judges of the credibility of the witnesses and the weight of the evidence. As used in these instructions the credibility of a witness means the truthfulness or lack of truthfulness of the witness.

The weight of the evidence means the extent to which you are or are not convinced by the evidence.

The number of witnesses testifying on one side or the other of an issue is not alone the test of credibility of the witnesses and the weight of the evidence.

If warranted by the evidence you may believe one witness against a number of witnesses testifying differently.

The tests are; how truthful is the witness and how convincing is his or her evidence in light of all the evidence and circumstances shown.

## IV.

### CONCLUSION

The trial court correctly refused to strike certain jurors for cause. Additionally, the trial court correctly refused to give defense instruction No. 12. Therefore, the trial court's judgment finding the defendant guilty of first degree sexual abuse and sentencing him to one to five years in the state penitentiary is affirmed.

Affirmed.

Judge JOHNSON, sitting by temporary assignment.

Justice SCOTT did not participate.

In determining the credit in weight you will give to the testimony of any witness who has testified before you may consider it found by you from the evidence the good memory or lack of memory of the witness, the interest or lack of interest of the witness in the outcome of the trial, the demeanor and manner of testifying of the witness, the opportunity and means or lack of opportunity and means of having knowledge of the matters concerning which the witness testified and the reasonableness or unreasonableness of such testimony.

From these considerations and all other conditions and circumstances appearing from the evidence you may give to the testimony of the witness such credit and weight as you believe it to entitled to receive.

If you believe that any witness in this case has knowingly testified falsely as to any material fact you may, after considering and weighing the testimony of such witness, disregard the whole of the testimony of such witness or give it or any part thereof such weight and credit as you believe it to be entitled to receive.