STATE of Delaware

v.

Lester McKinley JOHNSON.

Superior Court of Delaware,
New Castle.

Aug. 24, 1972.

Richard R. Wier, Jr., State Prosecutor, James A. Erisman, Deputy Atty. Gen., Dept. of Justice, Wilmington, for State of Delaware.

Louis L. Redding, Angelo Falasca, Asst. Public Defenders, Wilmington, for Lester McKinley Johnson.

**742**

QUILLEN, Judge.

The defendant was convicted by a verdict of the jury of murder in the first degree. At the time of rendering the verdict, the jury did not recommend mercy. This result, under Delaware statutory law, would make the death penalty mandatory. Subsequently, the jury informed the Court that it was the jury's intention for the Court to have the option of imposing life imprisonment instead of the death penalty, an option provided for by Delaware statutory law if the jury recommends mercy. 11 Del.C. § 3901.

The defendant has moved for a new trial. In response the State opposes a new trial but concedes in its initial memorandum that the Court should amend the verdict to include a recommendation of mercy.

The State argues that a ruling on the constitutionality of the death penalty is premature due to the possibility of future decisions by the United States Supreme Court and the Delaware Supreme Court. It is, of course, possible that future decisions could alter the results of many cases and error may occur. But this Court should not unduly delay a decision in a case involving a legal issue which has just exhaustively been considered by the United States Supreme Court on the chance that the decision may be refined in the future. Nor does the pending certification in the Supreme Court of Delaware direct itself to the problem of this case. If the Supreme Court of Delaware is called upon to consider fully the cases in which the death penalty was previously imposed and which were appealed to the United States Supreme Court, the time schedule is at best uncertain. I think this case should be decided.

■ Primarily, in light of the Supreme Court opinion in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (June 29, 1972), I conclude that the death penalty cannot constitutionally be imposed in this case.

A Court does not reach such a decision out of the personal preference of the judge. Judges, just as the other persons in the general population, are divided on the wisdom of a legislative policy permitting capital punishment. But the legal constitutional question is different. Never was this difference more dramatically demonstrated than by the rare personal comments expressed by Justice Blackmun in his *Furman* dissent:

"Cases such as these provide for me an excruciating agony of the spirit. I yield to no one in the depth of my distaste, antipathy, and, indeed, abhorrence, for the death penalty, with all its aspects of physical distress and fear and of moral judgment exercised by finite minds. That distaste is buttressed by a belief that capital punishment serves no useful purpose that can be demonstrated. For me, it violates childhood's training and life's experiences, and is not compatible with the philosophical convictions I have been able to develop. It is antagonistic to any sense of 'reverence for life'. Were I a legislator, I would vote against the death penalty for the policy reasons argued by counsel for the respective petitioners and expressed and adopted in the several opinions filed by the Justices who vote to reverse these convictions."

Nor, in this instance, does this Court reach this decision by an independent professional legal opinion reaching the ultimate decision of the unconstitutionality of the death penalty. The Delaware legal view has been the view expressed by the dissenting United States Supreme Court Justices in *Furman*. Justice Blackmun put it simply in his *Furman* dissent:

". . . I find it difficult to accept or to justify as a matter of history, of law, or of constitutional pronouncement. I fear the Court has overstepped. It has sought and has achieved an end."

Mr. Justice Powell also expressed the general philosophy of Delaware Courts, as I

understand it, in the conclusion of his dissenting opinion:

". . . While overreaching by the Legislative and Executive Branches may result in the sacrifice of individual protections that the Constitution was designed to secure against action of the State, judicial overreaching may result in sacrifice of the equally important right of the people to govern themselves. The Due Process and Equal Protection Clauses of the Fourteenth Amendment were 'never intended to destroy the States' power to govern themselves.' Black, J., in Oregon v. Mitchell, 400 U.S. 112, 126, 91 S.Ct. 260, 265, 27 L.Ed.2d 272 (1970).

The very nature of judicial review, as pointed out by Justice Stone in his dissent in the *Butler* case [United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477], makes the courts the least subject to Madisonian check in the event that they shall, for the best of motives, expand judicial authority beyond the limits contemplated by the Framers. It is for this reason that judicial self-restraint is surely an implied, if not an expressed, condition of the grant of authority of judicial review. The Court's holding in these cases has been reached, I believe, in complete disregard of that implied condition."

In this regard, I should emphasize that were it not for Furman v. Georgia, *supra*, it is clear that this Court would, under Delaware decisional law, uphold both the death penalty and the Delaware statutory provisions in regard to it. The claim that the death penalty constitutes cruel and unusual punishment has been rejected in Delaware. As our Supreme Court said recently in Steigler v. State, Del.Supr., 277 A.2d 662, 669 (1971):

". . . In our opinion, the matter of the retention or abolition of the death penalty is a question for the lawmaking authorities rather than the Courts.

As was said in State v. Cannon, Del. Supr., 190 A.2d 514 (1963):

'It is the province of the General Assembly in its wisdom to give expression to the public will. * * * We think the standards of present day society are to be determined by the expressions of that society, itself, and not by an expression of the individual opinions of members of the Judiciary. * * * The only manner in which such an expression can be made is through the action of duly elected representatives of the Society whose standard is to be applied.' "

I make these comments in light of the five to four decision in *Furman* and in particular light of the fact that the four most recent appointees to the Court were in the minority. The conclusion that the death penalty cannot be imposed in this case is compelled by the decision in the *Furman* case and by the opinions of the five distinguished Justices who formed the majority. The majority decision is entitled to respect not only as the law of the land, but also because of the ability of the five Justices who independently supported it. But, due to the unsettled state of the law, it is important for state courts to specifically note the reasons for decisions on the capital punishment question. Since, as Chief Justice Burger said, the "actual scope" of the *Furman* decision "is not entirely clear" and since the four dissenting votes raise a questionable prognosis for the life of the decision, it is particularly important for state law that our legal decisions note our reliance on *Furman* as a matter of constitutional duty and not as a matter of independent deliberate decisional evaluation.

The *per curiam* judgment in *Furman* and the two related cases held that "the imposition and carrying out of that death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." Five Justices supported the judgment. Two Justices, Mr. Justice Brennan and Mr. Justice Marshall, held that the punishment of death was "cruel

and unusual" and the States may no longer inflict it as a punishment for crimes. The other three opinions supporting the majority decision present more complex legal propositions. But the point is the Supreme Court clearly stated the result of the decision was to invalidate all pending death sentences. Justice Marshall wrote:

"Hanging in the balance are not only the lives of three petitioners, but those of the almost 600 other condemned men and women in this country currently awaiting execution."

Justice Powell, with the concurrence of the three other dissenters, wrote:

"The Court's judgment removes the death sentences previously imposed on some 600 persons awaiting punishment in state and federal prisons throughout the country. At least for the present, it also bars the States and the Federal Government from seeking sentences of death for defendants awaiting trial on charges for which capital punishment was heretofore a potential alternative.

. . . The capital punishment laws of no less than 39 States and the District of Columbia are nullified."

There are other similar comments in the opinions.

There is no doubt of what the Supreme Court did in fact. There is no doubt that the Delaware mercy statute has the "uncontrolled discretion" feature which was severely criticized. While one might ask if Delaware history would show the death penalty is "freakishly imposed", the United States Supreme Court did not appear to rely on such a State by State analysis for this factor. In short, a fair reading of the nine opinions includes an invalidating of the Delaware statutory scheme permitting the death penalty as a matter of discretion. This is, of course, highlighted by the fact that two Delaware cases were decided under the umbrella of the *Furman* opinion.

Since the defendant insofar as the trial involved sentence options, was tried under an invalid statutory scheme prior to the *Furman* opinion, he falls under its doctrine as well as persons who had been sentenced. As to pending cases to be tried in the future, a different legal question might be presented if the mercy statute is declared unconstitutional and the death penalty remains as contended by the State. Then the death penalty would not be a potential alternative but a legislative mandate. That problem has been certified to the Delaware Supreme Court.

■ The consequence is that the sentencing issue surrounding the recommendation of mercy in this case is moot. The death penalty cannot be imposed. Under the statutory scheme by which the defendant was tried, the only option to death in first degree murder cases has been life imprisonment. The statutory sentence for the lesser included offense of second degree murder is life imprisonment. Accordingly, life imprisonment must become the penalty in this case where trial occurred prior to *Furman* pursuant to a statutory scheme with a discretionary death-life imprisonment option.

This result presents no problem of legal analysis under our law. The recommendation does not become a constituent part of the verdict and the verdict is complete notwithstanding uncertainty about the recommendation. Harris v. State of Delaware, Del.Supr., 293 A.2d 291 (Decided May 12, 1972).

Nor does the case present a problem of prejudice to the defendant in fact. There is no doubt that the jury voted unanimously to convict the defendant of first degree murder. The issue on the merits, unlike the issue on the recommendation, was exhaustively framed by counsel. The reporting of the verdict, unlike the reporting of the recommendation, did not present the jury with an unfamiliar duty. It is simply clear that the jury believed the State's version of the case.

It certainly was not error to deny the defendant's motion for a judgment of ac-

quittal. The evidence in the case clearly justified the guilty verdict. Indeed, the contrary to the defense claim is true. The defendant's version of the shooting is incredible.

As to the claim that the State, by use of peremptory challenges, purposefully excluded black persons from the jury, it is difficult to maintain such a claim when the forelady was black. The State may have had numerous reasons to exercise its challenges in the manner it did, including the past performance of juries in which challenged panel members participated. I find that claim to be without merit. Furthermore, I do not believe any of the twelve jurors were sworn without the defendant's consent.

The motion for a new trial is denied. It is so ordered.

Pursuant to the statutory requirement, a presentence investigation is ordered. Sentencing is scheduled on September 5, 1972, at 10 a. m. In light of the conviction and the history of flight, bail is set at $75,000. It is so ordered. 11 Del.C. § 2103. The fixing of bail in this case should not be construed as precedent in untried cases of first degree murder.