**Lester McKinley JOHNSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Sept. 14, 1973.

Louis L. Redding and Angelo Falasca, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Richard R. Wier, Jr., State Prosecutor, Wilmington, for plaintiff below, appellee.

HERRMANN, C. J., CAREY, J., and BROWN, Vice-Chancellor, sitting.

CAREY, Justice:

Lester McKinley Johnson appeals his conviction of first-degree murder. He presents three questions for our consideration:

I

Johnson, a black man, contends that the prosecutor's use of peremptory challenges to exclude several black people from the jury denied him a fair trial. The Court, on *voir dire,* questioned seventy-five prospective jurors, of whom sixty-five were white and ten black. The first black person called was seated as a juror in this case. Four other black people were excused by the Court for cause, and the remaining five were excused by the Deputy Attorney General by peremptory challenges.

■ Although we agree with appellant's contention that the State's systematic improper striking of jurors for racial reasons can taint the criminal process, the record shows no such purposeful, deliberate exclusion of black people in this case. In fact, the State accepted one of the six eligible black persons as the jury's forelady. There is no evidence that the prosecutor's intent was other than to obtain a fair and impartial jury, and, in the absence of such proof, we shall not now hypothesize that the State's motives in exercising its peremptory challenges were improper. The State's use of its peremptory challenges did not deny the appellant any constitutional right.

II

The Court, in conducting the *voir dire* of the prospective jurors, asked whether each of them could follow the instructions of the Court, and each of those chosen answered in the affirmative. At the conclusion of the evidence, the Court gave the jury its instructions,[1] and provided each juror with a typewritten copy thereof. The jury returned a verdict of guilty of first-degree murder, without a recommendation of mercy. Two working days later, the trial Judge recalled the jury, at which time they indicated that they had believed their verdict would allow the Judge to decide whether the sentence should be death or life imprisonment.[2] As a post trial matter, the trial Judge ruled that the death penalty could not be constitutionally imposed. State v. Johnson, Del.Super., 295 A.2d 741 (1972).

■ Appellant argues that because each juror indicated on *voir dire* that he could follow the Judge's instructions, and because the verdict of the jury indicates that they may have been confused with respect to the instruction regarding the effect of a recommendation of mercy, it follows that, at the time of the *voir dire* examination, the jurors concealed a material fact—the fact that they did not understand the law as explained by the Judge. Thus, appellant argues, he was denied the opportunity to challenge these jurors for cause. Appellant's syllogism is erroneous. Assuming that the jurors were confused at the time they rendered their verdict, it does not follow that they concealed anything at the time they were questioned on *voir dire.* In the absence of some proof to the contrary, we must assume that the jurors' answers on *voir dire* were honest.

1. The jury was instructed that they could return one of four verdicts: guilty of first-degree murder; guilty of first-degree murder with a recommendation of mercy; guilty of second-degree murder; or not guilty.

2. This suggests that the jury misunderstood 11 Del.C. § 3901 [since held unconstitutional: State v. Dickerson, Del.Supr., 298 A.2d 761 (1972)], which *required* that the death sentence be imposed *unless* the jury recommended mercy.

Similarly, appellant's contention that this misunderstanding by the jury constituted a denial of his right to a trial by a competent jury is without merit.

## III

The third issue raised by appellant is whether the Court erred in admitting evidence that Johnson had escaped from the Delaware Correctional Center four months after having been extradited for first-degree murder. The general rule is that such evidence is admissible as tending to show consciousness of guilt; Wigmore, Evidence, § 276 (3d Ed. 1940); but appellant argues that because he was imprisoned for two offenses,[3] it would be impossible for the jury to affix this "consciousness" to the particular crime charged. Therefore, he contends, his trial for murder was prejudiced by evidence of an escape which may have been motivated by consciousness of guilt of a separate crime. Although some courts exclude evidence of flight under circumstances such as these (see State v. Green, 236 S.W.2d 298, Sup.Ct.Mo.1951), we believe that the better rule is to permit the jury to consider such evidence. People v. Yazum, 13 N.Y. 2d 302, 246 N.Y.S.2d 626, 196 N.E.2d 263 (1963); State v. Piche, 71 Wash.2d 583, 430 P.2d 522 (1967). Because evidence of a defendant's escape is undeniably relevant, we hold that the admissibility of this evidence does not depend upon its irrefutable connection with feelings of guilt about a particular crime. Of course, when several inferences may arise from such evidence, the defendant may explain the reasons for his escape. In this case, the defendant did in fact offer an explanation for his escape, and the jury no doubt gave due consideration to his testimony. The appellant was not prejudiced by the admission of evidence of his escape.

The conviction is affirmed.

3. Appellant was also charged with having violated his parole.