STATE OF WEST VIRGINIA

*v.*

ROBERT PAYNE

(No. 14334)

Decided June 30, 1981.

*John R. Frazier,* for P. E.

*Chauncey H. Browning,* Attorney General *Thomas N. Trent,* Assistant Attorney General, for D. E.

McHugh, Justice:

The appellant, Robert Payne, was convicted in the Circuit Court of Mercer County of the crime of statutory rape. The case is before this Court on an appeal from a final order of the Circuit Court of Mercer County, entered on September 2, 1976, sentencing the defendant to imprisonment in the West Virginia Penitentiary and denying the defendant's motion to set aside the verdict and award him a new trial.

In 1973 the prosecuting witness in this case, who was then 13 years old, resided in Princeton, West Virginia, with her parents. On March 28, 1973, the prosecuting witness was alone in the front yard of her parents' home, at about 8:15 P.M., when someone grabbed her from behind and threatened to kill her if she screamed. Her assailant forced the prosecuting witness to accompany him to a secluded area where the rape allegedly occured.

The defendant, Robert Payne, was indicted for the offense of statutory rape by the July, 1973, term of the Mercer County Grand Jury. His first trial, in July, 1974, resulted in a mistrial after the jury was unable to reach a

verdict. The defendant was convicted after a second trial which ended on August 11, 1976. The defendant's motion to set aside the verdict and award him a new trial was denied, and he was sentenced, by an order entered on September 2, 1976. From that order he filed a petition for an appeal.

On this appeal the defendant assigns, among others, the following errors: (1) the trial court's failure to grant his motion to suppress evidence of prior criminal convictions and failure to assure the defendant that, if he testified in his own defense, no such convictions could be brought out on cross-examination; (2) the trial court's refusal to strike a member of the jury panel for cause upon a motion made by the defendant; (3) the trial court's refusal to give jury instructions offered by the defendant on the issue of identification; (4) the trial court's admission of evidence that the defendant had failed to appear for a previously scheduled trial, had forfeited bond, that a capias had been issued for him, and that extradition proceedings had been instituted to return him to this State; and (5) the trial court's failure to allow the defendant to elect between alternate sentences under the "savings statute."

## I. PRIOR CONVICTIONS

The defendant, prior to his trial, moved to suppress any evidence of his prior criminal record. The trial court denied the motion. The motion was renewed at the close of the State's case and was again denied. At that time the court was informed that the defendant would not take the stand in his own behalf. The trial judge advised the defendant that he had the right to take the stand on his own behalf but did not assure the defendant that no prior criminal conviction would be used against him should he elect to testify.

The defendant relies upon *State v. McAboy*, 236 S.E.2d 431 (W.Va. 1977), and *State v. McKinney*, 244 S.E.2d 808 (W.Va. 1978), in assigning the trial court's action as error. In *McAboy* we held:

> In the trial of the criminal case a defendant who elects to testify may have his credibility impeached

by showing prior convictions of perjury or false swearing, but it's impermissible to impeach his credibility through any other prior convictions.

*State v. McAboy, supra,* at Syl. pt. 1.

In *State v. McKinney, supra,* we extended the holding of *McAboy* to those situations where the threatened use of prior criminal convictions on cross-examination prevents the defendant from taking the stand in his own behalf:

A defendant in a criminal case is entitled to testify on his own behalf and so long as he does not place his character and reputation in issue, he is entitled to assurance by the court that no prior convictions, save convictions by perjury or false swearing, would be revealed on cross examination.

*State v. McKinney, supra,* at Syl. pt. 2.

*State v. McAboy, supra,* was, by its terms, to be applied retroactively to cases "in the trial courts or in the appellate process where the point has been specifically preserved." 236 S.E.2d at 437. The State, on this appeal, concedes that this case falls within the limited retroactivity contained in *McAboy.* The State only argues here that the error below was harmless. We cannot agree.

The harmless error rule was set forth by this Court in Syl. pt. 2, *State v. Atkins,* 261 S.E.2d 55 (W.Va. 1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980):

Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

This analysis was applied to a *State v. McAboy* type situation in *State v. Toppings,* 272 S.E.2d 463 (W.Va. 1980). The case presently before us is different from *Toppings* in that here the defendant did not take the stand as a result of the trial court's refusal to suppress evidence of prior convictions. In *Toppings* the defendant did take the stand and was questioned about a prior conviction. We held, there, that the error was not harmless because of the probable prejudicial effect that the evidence of prior convictions had on the jury.

In this case, it is not evidence introduced by the State that is assigned as error; the assigned error is that the defendant, in effect, was denied his right to testify in his own behalf. The defendant has not assigned insufficiency of the evidence as error. Applying the *State v. Atkins supra,* analysis to this situation, therefore, requires a determination of whether the court's action in preventing the defendant from taking the stand prejudiced the jury. We think it did.

The defendant's first trial on this charge resulted in a hung jury. The main difference between the first trial and the one from which this appeal is taken is that the defendant testified at his first trial. Because he did not testify at this second trial, the defendant was not able to offer an explanation for his failure to appear at his second trial at the time it was originally scheduled, *see* section IV, *infra,* nor was he able to contradict the identification testimony offered by the State, *see,* section III, *infra.* In light of these considerations, the trial court's action in violation of the defendant's *McAboy* and *McKinney* rights was prejudicial error.

## II. *THE JURY PANEL*

Voir dire of the jury panel in this case revealed that one juror was a close friend of the special prosecutor and his wife and that the juror's husband was the Democratic nominee for sheriff of Mercer County. The defendant's motion to strike this juror for cause was denied by the trial court. The defendant relies on *State v. West,* 157 W.Va. 209,

200 S.E.2d 859 (1973), and *State v. Pratt*, 244 S.E.2d 227 (W.Va. 1978), in assigning the trial court's action as error.

In *Pratt* we held, at syllabus point 3: "Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse." In *West* we said:

> . . . [W]hen the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial or enforcement arm of State government, defendant's challenge for cause should be sustained by the court. A defendant is entitled to a panel of twenty jurors who are free from exception, and if proper objection is raised at the time of impaneling the jury, it is reversible error for the court to fail to discharge a juror who is obviously objectionable. In any case where the trial court is in doubt, the doubt must be resolved in favor of the defendant's challenge, as jurors who have no relation whatsoever to the State are readily available.

200 S.E.2d at 866.

The State argues on this appeal that the juror involved in this case did not have even a "tenuous relationship" with the prosecutor or a law enforcement officer. In light of the rights that the *voir dire* process is designed to protect and the facts of this case, we cannot agree with that contention. The purpose of *voir dire* is to assure that the defendant's right to a jury free of interest, bias or prejudice is protected and effectuated. *Voir dire* works to protect that right not only by providing the basis for challenges for cause but also by providing a basis to "enable a litigant and his counsel to exercise reasonable judgment in utilizing peremptory challenges." *State v. Pendry*, 227 S.E.2d 210 (W.Va. 1976). We noted in *State v. Pendry, supra,* that a prospective juror may, without his own knowledge or admission, have a demonstrable prejudice or bias. The defendant was entitled to a panel free of members who had even a tenuous relationship with the prosecutorial or enforcement arm of

the State. The trial court's refusal to strike the panel member in this case was error under *State v. West, supra.*

## III. *THE IDENTIFICATION INSTRUCTIONS*

The defendant offered seven instructions to the jury on the issue of identification. The trial court gave two of the instructions and refused to give the other five. The trial court instructed the jury as follows:

> "The Court instructs the jury that in order to find the defendant, Robert Payne, guilty of the offense charged you must believe that the identification of him by [the complaining witness] was accurate beyond a reasonable doubt.

> "The Court instructs the jury that the burden of proof on the state extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime. Therefore, if after examining the testimony, you have a reasonable doubt as to the accuracy of the identification you must find the defendant not guilty."

The defendant, on this appeal, argues that, under the circumstances of this case, the instructions given were not enough and that a further cautionary instruction should have been given because the identification of the defendant was based on the uncorroborated testimony of the prosecuting witness. In support of that argument the defendant cites *State v. Perry,* 41 W.Va. 641, 24 S.E. 634 (1896).

In *State v. Perry, supra,* the defendant had been accused of rape. The only testimony that identified the defendant as the assailant was that of the prosecuting witness. Her testimony was contradicted by the defendant's testimony. The trial court, in that case, refused to give the jury the following instruction: "The court instructs the jury that if they believe from the evidence in the case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness ... then they should scrutinize her testimony with care and caution." *Id.* at

651-652. In holding the refusal to give the instruction to be error we said:

"In the trial of all felony cases, the jury should scrutinize the testimony of all contradicted and uncorroborated witnesses with care and caution. This instruction propounds a general principle of law, is unobjectionable, and should have been given, as it leaves the weight of the testimony entirely with the jury, and relates only to the proper discharge of the duty they owe to the accused and the state alike.

*Id.* at 652. The defendant in the case presently before us offered three instructions that incorporated the language of the instruction approved in *State v. Perry.* All three instructions were refused.

In opposing this assignment of error, the State argues, relying on *State v. Garten,* 131 W.Va. 641, 49 S.E.2d 561 (1948), that the trial court's refusal to give the instruction was not error because the identification testimony of the complaining witness in the case presently before us was uncontradicted. In *State v. Garten* the prosecutrix's testimony was not only uncontradicted, it was also corroborated. *State v. Perry* was distinguished on that basis.

In the case presently before us, the prosecuting witness was the only person to offer testimony regarding the identity of her assailant. She identified Robert Payne as that person in an in-court identification. Her testimony was not contradicted, but, the defendant, as noted above, was prevented from testifying. The record discloses that the prosecuting witness did not see her assailant until they were in a secluded, shaded area on the night the assault occurred. The record also discloses that she gave descriptions of her assailant, prior to identifying the defendant, which were inconsistent with the defendant's physical appearance. We also note that the assault occurred on March 28, 1973, but the defendant was not identified as the assailant until May 9, 1973. There are indications in the record that the prosecuting witness may have been subjected to pressure by her father and the police to

identify someone as her assailant between March 28 and May 9. Her initial identification of the defendant amounted to a statement that she "believed" Robert Payne to be her assailant.

The essential facts of the case presently before us fall squarely between the facts found in *State v. Perry* and *State v. Garten*. In *State v. Perry* the testimony of the prosecutrix was uncorroborated and contradicted. In *State v. Garten* the testimony of the prosecutrix was corroborated and uncontradicted. In this case the testimony of the prosecutrix was uncorroborated and uncontradicted. So, the question is, in this intermediate situation, which case should control? Under the circumstances of this case we think that the *State v. Perry* instruction should have been given. Here, as in *State v. Perry* the testimony was not corroborated and here, even more than in *Perry,* the identification is itself questionable. The distinction is that the defendant did not testify in this case whereas the identification testimony in *State v. Perry* was contradicted by the defendant's testimony. Under the circumstances here the defendant was the only person who could have contradicted the testimony of the complaining witness and he was prevented from taking the stand by the trial court action discussed in section I, *supra.* Under these circumstances the fact that the testimony was not contradicted is not enough to justify the refusal to give a *Perry* type instruction. Where the State's case is based upon the uncorroborated and uncontradicted identification testimony of a prosecuting witness, it is error not to instruct the jury upon request that, if they believe from the evidence in the case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, then the jury should scrutinize such testimony with care and caution.

The defendant also asks us to adopt a rule that an instruction be given advising the jury of the factors to be considered in evaluating the identification testimony. The defendant refers us to the model instructions in *United*

*States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972), and *United States v. Holley*, 502 F.2d 273 (4th Cir. 1974).[1]

---

[1] The *Telfaire* court recommended the following instruction, noting that the material in brackets is "to be used only if appropriate. Instructions to be inserted or modified as appropriate to the proof and contentions." 469 F.2d at 558.

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.]

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is

We think that this type instruction may be appropriate in cases where the State's case rests largely upon the uncorroborated identification testimony of a witness. The instruction may also be modified to fit the circumstances of any other type of case involving identification testimony where, in the trial judge's discretionary opinion, the giving of such an instruction would aid the jury. We emphasize that we are not here mandating the use of this type instruction in every case involving identification testimony. Rather, we note that this type instruction may be proper in cases where the identification testimony is uncorroborated.

We think that this type instruction is a logical corollary and extension of a long line of cases dealing with identification testimony. It is well established that, prior to allowing an in-court identification, the trial judge should consider several factors in evaluating the identification. *See, e.g., Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Kennedy,* 249 S.E.2d 188 (W. Va. 1978); *State v. Williams,* 249 S.E.2d 752 (W. Va. 1978); *State v. Casdorph,* 230 S.E.2d 476 (W. Va. 1976). In *State v. Casdorph, supra,* at Syl. pt. 3, we held:

---

generally more reliable than one which results from the presentation of the defendant alone to the witness.]

[(3) You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

469 F.2d at 558-559.

> In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

The *Neil v. Biggers* line of cases, in essence, make the initial question of in-court identification a question of law to be decided by the trial judge prior to trial. Once a decision is made to admit the identification testimony, it becomes a question of fact for the jury. We think that, in some cases, it is only proper that the jury be apprised of those same factors so as to better be able to evaluate the identification testimony. This is what the *United States v. Telfaire* type instruction would do. A jury should be alerted to those facts which are relevant in determining the reliability of identification testimony and in deciding how much weight should be given to that testimony in cases where the identification testimony is uncorroborated.

### IV. *FLIGHT*

At trial the State offered evidence that the defendant had failed to appear for a second trial on this charge, had forfeited his bond, that a capias had been issued against him and that extradition proceedings had been instituted to return him to this State. The evidence was admitted over the defendant's objection. On this appeal the defendant assigns the admission of such evidence as error.

The defendant recognizes that it is "well established in this jurisdiction, and generally, that evidence of an escape by a defendant from custody ... is admissible for the purpose of establishing guilty conscience or knowledge." *State v. Mayle*, 136 W.Va. 936, 69 S.E.2d 212 (1952). The

defendant, however, asks us to review and reject that rule. We decline to do so.

That evidence of flight is admissible upon a criminal trial is an almost universal rule.[2] Courts which have addressed

[2] *See, e.g., Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *United States v. Sims*, 617 F.2d 1371 (9th Cir. 1980); *United States v. Blue Thunder*, 604 F.2d 550 (8th Cir. 1979), *cert. denied*, 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1980); *United States v. Ritch*, 583 F.2d 1179 (1st Cir. 1978), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1979); *United States v. Schwartz*, 535 F.2d 160, *cert. denied*, 97 S.Ct. 1175 (2nd Cir. 1976); *United States v. Craig*, 522 F.2d 29 (6th Cir. 1975); *United States v. Hampton*, 457 F.2d 299, *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (7th Cir. 1972); *Bailey v. United States*, 416 F.2d 1110 (D.C. Cir. 1969); *United States ex rel. Hill v. Pinto*, 394 F.2d 470 (3rd Cir. 1968); *Burroughs v. United States*, 365 F.2d 431 (10th Cir. 1966); *United States v. Paige*, 324 F.2d 31 (4th Cir. 1963); *Monnette v. United States*, 299 F.2d 847 (5th Cir. 1962); *Tiner v. State*, 279 Ala. 126, 182 So.2d 859 (1966); *Neal v. State*, 372 So.2d 1331 (Ala. Cr. App.), *cert. denied*, 372 So.2d 1348 (1979); *State v. Loyd*, 126 Ariz. 364, 616 P.2d 39 (1980); *Russell v. State*, 262 Ark. 447, 559 S.W.2d 7 (1977); *People v. Hill*, 67 C.2d 105, 60 Cal. Rptr. 234, 429 P.2d 586, *cert. denied*, 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 607 (1967); *People v. Bates*, 190 Colo. 291, 546 P. 2d 491 (1976); *State v. Piskorski*, 177 Conn. 677, 419 A.2d 866 (1979); *State v. Johnson*, 295 A.2d 741, *aff'd.*, 312 A.2d 630 (Del. 1973); *Spinkellink v. State*, 313 So.2d 666 (Fla. 1975), *cert. denied*, 428 U.S. 911, 96 S.Ct. 3327, 49 L.Ed.2d 1221 (1976); *Dampier v. State*, 245 Ga. 427, 265 S.E.2d 565, *cert. denied*, 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 161, (1980); *State v. Caraballo*, 615 P.2d 91 (Hawaii 1980); *State v. Wrenn*, 99 Idaho 506, 584 P.2d 1231 (1978); *People v. McNeal*, 88 Ill. App.3d 20, 43 Ill. Dec. 480, 410 N.E.2d 480 (1980); *Porter v. State*, 391 N.E.2d 801 (Ind. 1979); *State v. Barr*, 259 N.W.2d 841 (Iowa 1977); *State v. Walker*, 226 Kan. 20, 595 P.2d 1098, (1979); *Fugate v. Commonwealth*, 445 S.W.2d 675 (Ky. 1969); *State ex rel. Womack v. Blackburn*, 393 So.2d 1216 (La. 1981); *State v. Rowe*, 238 A.2d 217 (Me. 1968); *Jones v. State*, 242 Md. 323, 219 A.2d 77 (1966); *Commonwealth v. Gilday*, 367 Mass. 474, 327 N.E.2d 851 (1975); *People v. Dixon*, 84 Mich. App. 675, 270 N.W.2d 488 (1978); *State v. Meany*, 262 Minn. 491, 115 N.W.2d 247 (1962); *Quarles v. State*, 199 So.2d 58 (Miss. 1967); *State v. Hardy*, 604 P.2d 792 (Mont. 1980); *State v. Collett*, 542 S.W.2d 783 (Mo. 1976); *Davis v. State*, 171 Neb. 333, 106 N.W.2d 490, *cert. denied*, 366 U.S. 973, 81 S.Ct. 1939, 6 L.Ed.2d 1262 (1960); *Mathews v. State*, 94 Nev. 179, 576 P.2d 1125 (1978); *State v. Barry*, 93 N.H. 10, 34 A.2d 661 (1943); *State v. Copeland*, 94 N.J. Super. 196, 227 A.2d 523, 36 A.L.R.3d 830 (1967); *State v. Hardison*, 81 N.M. 430, 467 P.2d 1002 (1970); *People v. Bryant*, 60 A.D.2d 810, 401 N.Y.S.2d 76 (N.Y. 1978); *State v. Lester*, 289 N.C. 239, 221 S.E.2d 268 (1976); *State v. Cron*, 14 Ohio App.2d 76, 43 O.O.2d 201, 236 N.E.2d 671 (1967); *Farrar v. State*, 505 P.2d 1355 (Okl. Cr. 1973); *State v. Stookey*, 253 Or. 367, 454

the more specific question have also, generally, held that jumping bail, issuance of a capias, extradition proceedings and failure to appear for trial are admissible as evidence of flight. In general, the time of the flight does not have to be immediately after the commission of the crime in order for the evidence to be admissible.[3] We do not here consider the case where the defendant was not aware that he was a suspect in the case.[4]

In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative

P.2d 267 (1969); *Commonwealth v. Davis*, 421 A.2d 179 (Pa. 1980); *In re Caldarone*, 115 R. I. 316, 345 A.2d 871 (1975); *Town of Hartsville v. Munger*, 93 S.C. 527, 77 S.E. 219 (1913); *State v. Wilson*, 297 N.W.2d 477 (S.D. 1980); *State v. Braggs*, 604 S.W.2d 883 (Tenn. Cr. App. 1980); *Logan v. State*, 510 S.W.2d 598 (Tex. Cr. App. 1974); *State v. Hopkins*, 11 Utah 2d 363, 359 P.2d 486 (1961); *State v. Teitle*, 117 Vt. 190, 90 A.2d 562 (1952); *Jones v. Commonwealth*, 208 Va. 370, 157 S.E.2d 907 (1967); *State v. Etheridge*, 74 Wash.2d 102, 443 P.2d 536 (1968); *Mayle, supra*; *Berry v. State*, 90 Wis.2d 316, 280 N.W.2d 204, *cert. denied*, 444 U.S. 1020, 100 S.Ct. 676, 62 L.Ed.2d 651 (1979); *Jones v. State*, 568 P.2d 837 (Wyo. 1977). So far as we have been able to determine, Alaska and North Dakota have not addressed the question.

[3] *See, e.g., State v. Reid*, 114 Ariz. 16, 559 P.2d 136, *cert. denied*, 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1976); *State v. Roderick*, 9 Ariz. App. 19, 448 P.2d 891 (1968); *Murphy v. State*, 255 Ark. 90, 498 S.W.2d 884 (1973); *People v. Green*, 27 Cal.3d 1, 164 Cal. Rptr. 1, 609 P.2d 468 (1980); *Johnson v. State*, 148 Ga. 702, 252 S.E.2d 205 (1979); *People v. Pelate*, 49 Ill. App.3d 11, 6 Ill. Dec. 913, 363 N.E.2d 860 (1977); *State v. Neal*, 231 La. 1048, 93 So.2d 554 (1957); *State v. Shetsky*, 229 Minn. 566, 40 N.W.2d 337 (1949); *State v. Browner*, 587 S.W.2d 948 (Mo. App. 1979); *Commonwealth v. Smith*, 250 Pa. Super. 460, 378 A.2d 1239 (1977); *Logan v. State*, 510 S.W.2d 598 (*Tex. Cr. App.* 1974); *Walker v. State*, 441 S.W.2d 201 (*Tex. Cr. App.* 1969).

[4] *See, e.g., State v. Piskorski*, 177 Conn. 677, 419 A.2d 866 (1979); *State v. Mayell*, 163 Conn. 419, 311 A.2d 60 (1972); *People v. Wilson*, 87 Ill. App.3d 693, 42 Ill. Dec. 729, 409 N.E.2d 344 (1980); *People v. Pelate*, 49 Ill. App.3d 11, 6 Ill. Dec. 913, 363 N.E.2d 860 (1977); *People v. Cox*, 74 Ill. App.2d 342, 220 N.E.2d 7 (1966); *State v. Walker*, 226 Kan. 20, 595 P.2d 1098 (1979); *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. denied*, 419 U.S. 1000 (1974). *Cf. Wokenfuss v. State*, 521 S.W.2d 630 (*Tex. Cr. App.* 1975).

value of such evidence outweighs its possible prejudicial effect. The trial judge should measure the probative value of the evidence by considering whether the facts and circumstances under which the defendant fled indicate a guilty conscience or knowledge. The burden at such hearing is upon the state. In considering whether the facts and circumstances of the case indicate a guilty conscience or knowledge, the trial judge should consider whether the defendant was aware of the charges pending against him at the time he fled; was aware that he was a suspect at the time he fled; or fled the scene of a crime under circumstances that would indicate a guilty conscience or knowledge; or otherwise fled under circumstances such that would indicate a desire to escape or avoid prosecution due to a guilty conscience or knowledge. At such hearing the defendant should be allowed to introduce evidence that he was not aware of the charges pending against him at the time he fled; or that he was not aware he was a suspect at the time he fled; or that he did not flee from the scene of a crime under circumstances that would indicate a guilty conscience or knowledge; or that he did not otherwise flee under circumstances that would indicate a guilty conscience or knowledge. At such hearing the defendant should be afforded an opportunity to explain his flight or absence from the jurisdiction. If the trial judge finds the defendant's explanation of his conduct to be reasonable, or that the state has not shown that, under the facts and circumstances of the case, the defendant's conduct reflects a guilty conscience or knowledge, then the evidence of flight should not be admitted as evidence of the defendant's guilty conscience or knowledge.

We also note that in this case a proper cautionary instruction was given to the jury:

> The Court instructs the jury that evidence of flight by the defendant is competent along with other facts and circumstances, on the defendant's guilt, but the jury should consider any evidence of flight with caution since such evidence has only a slight tendency to prove guilt.
>
> The jury is further instructed that the farther away the flight is from the time of the commission

of the offense the less weight it will be entitled to, and the circumstances should be cautiously considered since flight may be attributed to a number of reasons other than consciousness of guilt.

The trial court, in this case, however, did not hold an *in camera* hearing on the probative value of the evidence of flight and we cannot, therefore, determine whether such evidence was properly admissible. On remand, the trial court should follow this procedure before allowing the evidence of flight to be admitted.

## V. *THE SAVINGS STATUTE*

The defendant was tried under former *West Virginia Code*, 61-2-15, which made the crime of rape punishable by life imprisonment, or, in cases in which the jury recommended mercy, imprisonment of 10 to 20 years.[5] Effective in June, 1976, the statute was repealed and replaced by *W. Va. Code*, 61-8B-1, *et seq.*, known as the Sexual Assault Act. Under the new section of the Sexual Assault Act, *West Virginia Code*, 61-8B-3(b), the defendant in this case would have been subject to a possible fine of up to ten thousand dollars and imprisonment for 10 to 20 years.

On this appeal the defendant argues that *W. Va. Code*, 2-2-8 should have been applied to his case. *W. Va. Code*, 2-2-8 provides:

> The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specifically provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.

---

[5] Although former *W. Va. Code*, 61-2-15 provided for an indeterminate sentence of 10 to 20 years, the trial judge, in this case, sentenced the defendant to a determinate term of 12 years.

The defendant argues that since *W. Va. Code*, 61-8B-3(b) became effective in June of 1976, and he was not sentenced until September of 1976, that he should be allowed to elect between the penalties provided in the new and old statutes. We agree.

In *State ex rel. Arbogast v. Mohn*, 260 S.E.2d 820 (W. Va. 1979), we held at Syllabus point 2: "When a general savings statute specifically provides for the application of mitigated penalties upon the election of the affected party, he is entitled to choose the law under which he wishes to be sentenced." Without directly addressing the question, we have recognized that *W. Va. code*, 2-2-8, may apply to the repeal of *W. Va. Code*, 61-2-15, by the Sexual Assault Act, *W. Va. Code*, 61-8B-1, *et seq. State ex rel. Miller v. Bordenkircher*, 272 S.E.2d 676 (W. Va. 1980). On remand, therefore, the defendant should be allowed to elect which statute he is to be sentenced under, should he again be convicted.

We need not address the defendant's other assignments of error due to our disposition of this case.

*Reversed and Remanded.*