## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 17-0997**  (Fayette County 017-F-11)

**Jamie Ray Criser,**
**Defendant Below, Petitioner**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Jamie Ray Criser, by counsel Matthew Brummond, appeals the October 18, 2017, order of the Circuit Court of Fayette County that, following his convictions of kidnapping and second-degree sexual assault, sentenced him to a determinate period of incarceration of thirty years and an indeterminate period of ten to twenty-five years, respectively. The State of West Virginia, by counsel Shannon Frederick Kiser, filed a summary response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In the early morning hours of March 11, 2016, petitioner called his former girlfriend, Amber R. ("the victim"), and asked her for a ride. The victim, using a borrowed car, and with the former couple's sleeping child in the backseat,[1] picked up petitioner and drove him toward his friend, "G's," house as he had requested. The victim testified that, during the ride, petitioner asked her to have sex with him. The victim refused. She further testified that when she pulled into G's driveway, petitioner "kept telling me that I was going to 'f' him or he was going to 'f' me up worse than he had previously[,]" and that "he just kept repeating that he would 'f' me up worse than he did before[.]" She testified that she repeatedly begged petitioner "not to do this . . . . I told him my baby was in the seat . . . . and eventually he said that if I didn't get over there [i.e., the passenger's seat where he was seated] he'd kill me." The victim explained that she was scared for her safety and that of the child, that she did not feel she had "any way out," and that he asked her if she still loved him, but that she "couldn't say anything to him. I just couldn't talk because, at that point, I was having like a panic attack, I couldn't breathe. I was crying and

---

[1] Petitioner and the victim were no longer a couple. In fact, petitioner had become engaged to someone else.

1

shaking." Petitioner threatened to kill her if she continued to cry or wake the baby. According to the victim, she knew that petitioner was capable of hurting her because, several months earlier, he had beaten her up "pretty bad[ly] "because I didn't want to be with him."[2] The victim proceeded to testify that she eventually complied with petitioner's demand that she move to the passenger seat and, while she continued to cry, he again threatened to kill her if she woke the baby. Petitioner then raped her. After petitioner got out of the car, the victim sped away and called 9-1-1. A subsequent medical examination confirmed that the two engaged in sexual intercourse.

For his part, petitioner claimed that the two had consensual intercourse in the passenger seat of the car and that it was the victim's idea. According to petitioner, "She said, if I leave [my fiancé], then she'd have sex with me, because I told her we was [sic] getting married, so she got kind of jealous." Petitioner testified that he agreed to have sex with the victim, denied ever threatening her, and denied that she was crying or upset while they were engaged in sex. Petitioner testified, however, that, "I told her after we got done having sex that I didn't want to be with her because she was too crazy to be with, and she started crying."

In the hours after the crimes herein transpired, petitioner was approached by Fayette County Deputy Sheriff Ethan Shrewsbury. Deputy Shrewsbury testified that when he saw a man who fit petitioner's description walking toward petitioner's residence, he pulled up alongside him and asked him his name. After petitioner gave a false name, the officer asked, "Are you sure your name is not Jamie Criser?" Petitioner did not answer but, instead, fled on foot. The officer gave chase but was unable to catch up to him. Deputy Shrewsbury affirmatively identified petitioner at trial as the same man. Offering an explanation for his flight, petitioner testified that, after he exited the car, he "went for a little walk" and fled after he was approached by Deputy Shrewsbury because he believed the officer had a warrant for his arrest on the previously mentioned domestic battery conviction. Petitioner explained that he had been ordered to appear at the Day Reporting Center for thirty-six weeks in connection with that conviction but had failed to appear.

Fayette County Deputy Adam Roberts testified that, later that same night, he and another sheriff's deputy went to petitioner's residence to search for him. Deputy Roberts testified that he saw petitioner "with half of his body looking out of the window" of the trailer; "I hollered at him. He then went back inside of the residence." Petitioner denied that he was attempting to flee his residence when Deputy Roberts arrived looking for him.

Petitioner was arrested and charged with one count of kidnapping and one count of second-degree sexual assault. He was convicted by a jury of both charges and, by order entered on October 18, 2017, sentenced to a determinate period of thirty years of incarceration for the kidnapping conviction and an indeterminate period of ten to twenty-five years for the sexual assault conviction. The sentences were ordered to run consecutively. This appeal followed.

---

[2] Officer Jeremy Ortiz later testified that petitioner pled guilty to misdemeanor domestic battery following an incident with the victim in October of 2015.

This Court reviews the circuit court's order under the following standard of review:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *State v. Vance,* 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner's sole assignment of error is that the circuit court erred by allowing the State to introduce evidence of his prior acts of physical abuse of the victim, including a guilty plea to domestic battery, and of his flight from police after the assault, in violation of West Virginia Rule of Evidence 404(b).[3] Petitioner argues that the State failed to give pre-trial notice that it intended to introduce this evidence and that the circuit court failed to conduct an in camera hearing regarding its admissibility, as required by *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).[4]

------

[3] West Virginia Rule of Evidence 404(b) states as follows:

(b) Crimes, wrongs, or other acts.
(1) *Prohibited uses.* - Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
(2) *Permitted uses; notice required.* - This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must:
(A) provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and
(B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

[4] Syl. Pt. 2 of *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994), states as follows:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the

(continued . . .)

We find no error. Regarding the evidence of petitioner's prior acts of physical abuse of the victim, the record reveals that defense counsel objected to the admission of this evidence without stating any grounds for the objection. The trial court overruled the objection because "[i]t goes to state of mind." Additionally, petitioner failed to make any objection to Officer Ortiz's testimony that petitioner previously pleaded guilty to a domestic battery charge. *See* n.2. In fact, defense counsel affirmatively stated that he had no objection to the admission of the criminal judgment order and guilty plea that were presented as exhibits in connection with Officer Ortiz's testimony. This Court has stated that a "claim of error under Rule 404(b) is precluded from appellate review based on [a] failure to state this authority as ground for [an] objection before the trial court." *State v. DeGraw*, 196 W. Va. 261, 272, 470 S.E.2d 215, 226 (1996).

> West Virginia Rule of Evidence 103(a)(1) provides, in pertinent part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the *specific* ground of objection, if the specific ground was not apparent from the context. . . ."

*DeGraw*, 196 W.Va. at 272, 470 S.E.2d at 226. (Emphasis added). This Court has explained that "'the objecting party should not benefit from an insufficient objection if the grounds asserted in a valid objection could have been obviated had the objecting party alerted the offering party to the true nature of the objection.' 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 1-7(C)(2) at 78 (3rd ed. 1994)." *DeGraw,* 196 W. Va. at 272, 470 S.E.2d at 226 (footnote omitted).

Petitioner's failure at trial to specifically object to the admission of evidence of his prior bad acts and crimes as violative of Rule 404(b) (and concomitant failure to request a *McGinnis* in camera hearing on the same) denied the circuit court the opportunity to correct any alleged errors related thereto. Thus, we conclude that the circuit court did not err in admitting this evidence at trial.[5]

---

acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

[5] Petitioner briefly claims that the circuit court erred in failing to instruct the jury that it should not infer guilt from this evidence and in permitting the State to make improper remarks in (continued . . .)

4

Finally, we address petitioner's argument that the admission of officer testimony that petitioner fled from police as they approached him while investigating the crimes at issue violated Rule 404(b). At trial, defense counsel objected to the testimony of Deputy Shrewsbury that, in the hours after the assault, petitioner fled as Shrewsbury pulled up alongside him in an effort to question him. Defense counsel argued that, according to the officer's testimony, petitioner fled "after the fact of the crimes that are alleged in the indictment [were] complete;" that petitioner was never charged with "fleeing or escape or anything of that nature[;]" and that the State failed to file a motion to admit such evidence under Rule 404(b). The trial court overruled the objection, ruling that "the jury may infer from the fact that he was running from the police that morning some inference of an acknowledgment of guilt or whatever. It may be relevant to this matter, how the defendant acted on this particular morning." Defense counsel also objected to Deputy Roberts's testimony that petitioner attempted to escape out of the window of his residence when officers arrived there. The circuit court overruled the objection and stated, "As I indicated earlier, this conduct could show consciousness of guilt on the defendant's part, so I'll permit the testimony."

Regarding whether evidence of flight should be admissible at trial, this Court has held that

> [i]n certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, *upon request by either the State or the defendant*, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.

Syl. Pt. 6, *State v. Payne*, 167 W. Va. 252, 280 S.E.2d 72 (1981) (emphasis added). On appeal, petitioner argues that the evidence of flight should have been excluded because the circuit court failed to hold a hearing on whether the evidence was more probative than prejudicial. However, the record on appeal does not reveal, nor does petitioner claim, that he requested any such hearing either prior to trial or when the officers testified. Petitioner objected to the officers' testimony, which objection was overruled. Petitioner did not then request a continuance so that

its closing argument, including that petitioner was a "user" and "abuser." In that petitioner failed to offer any such jury instruction or object to the State's comments, we conclude that any such error, if it was error, was waived. *See* Syl. Pt. 3, *State v. Rollins*, 233 W. Va. 715, 760 S.E.2d 529 (2014) ("'Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court.' Syl. pt. 6, *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410 (1945)."); Syl. Pt. 6, *Page v. Columbia Nat. Res., Inc.*, 198 W. Va. 378, 480 S.E.2d 817 (1996) ("'A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal.' Syllabus point 1, *Maples v. West Virginia Department of Commerce,* 197 W.Va. 318, 475 S.E.2d 410 (1996).").

an in camera hearing could be conducted. Instead, petitioner testified in his own defense and explained to the jury that his reason for fleeing from Deputy Shrewsbury in the hours after the assault was unrelated to the instant crimes and denied altogether that he fled from Deputy Roberts when he came to his home looking for him. A proper cautionary instruction on the evidence of flight was then given to the jury.[6] Given these facts, we cannot conclude that the circuit court committed reversible error in admitting evidence of petitioner's flight from police.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

---

[6] The jury was instructed as follows:

The Court instructs the jury that evidence of flight by the defendant is competent along with other facts and circumstances, on the defendant's guilt, but the jury should consider any evidence of flight with caution since such evidence has only a slight tendency to prove guilt.

The jury is further instructed that the farther away the flight is from the time of the commission of the offense the less weight it will be entitled to, and the circumstances should be cautiously considered since flight may be attributed to a number of reasons other than consciousness of guilt.

*See Payne*, 167 W. Va. at 267-68, 280 S.E.2d at 81.